BOB TATONE FORD, INC.,
et al., Plaintiffs,

v.

FORD MOTOR COMPANY, Defendant.

No. C–3–99–285.

United States District Court,
S.D. Ohio,
Western Division.

Sept. 5, 2000.

Ronald L. Burdge, Dayton, OH, for Plaintiffs.

Elizabeth A. McNellie, Columbus, OH, for Defendant.

**DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 13); JUDGMENT TO BE EN-- TERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY**

RICE, Chief Judge.

In December, 1975, Plaintiff Bob Tatone Ford, Inc. ("Tatone Ford"), and Defendant entered into a Ford Sales and Service Agreement ("franchise agreement"). This litigation arises out of the Defendant's efforts to terminate that agreement, an event which became effective on June 17, 1999. Tatone Ford claims that Defendant's termination of the parties' agreement violated the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.*; Ohio Revised Code §§ 1333.72–73 (repealed); the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code; and constituted a breach of contract.[1] Since this is not, however, the first lawsuit between these parties arising out of the same general dispute, *see Bob Tatone Ford, Inc. v. Ford Motor Company*, Case No. C–3–97–415 (S.D.Ohio), *affirmed*, 197 F.3d 787 (6th Cir.1999), this Court begins by setting forth the background which initially led to that earlier litigation and, then, to this lawsuit.

In April, 1995, Defendant notified Tatone Ford that it intended to terminate the franchise agreement, citing its lower than average share of sales of new cars. In accordance with a provision in the franchise agreement, Tatone Ford appealed that decision to Ford's Dealer Policy Board ("Policy Board"). That body delayed resolution on the Tatone Ford's appeal for a period of more than two years, in order to permit it one final opportunity to cure the alleged deficiencies. In September, 1997, the Policy Board concluded that Tatone Ford had failed to cure those deficiencies and, thus, upheld the Defendant's decision to terminate the franchise agreement between the parties.

---

1. The other Plaintiff in this litigation is Bob Tatone, whose only claim against Defendant is part of the Fifth Claim for Relief, which alleges that both Tatone Ford and Bob Tatone could recover under a tortious interference with contractual relations theory. Given that the Plaintiffs have dismissed that claim (*see* Doc. # 16), the Court limits its discussion to Tatone Ford and its four claim, which are set forth in the text above, and will refer to Plaintiff, henceforward, in the singular.

Tatone Ford then filed suit against Defendant, setting forth claims under the Ohio Revised Code §§ 1333.72–73 (repealed), and the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code, as well as alleging that the Defendant's actions constituted a breach of contract.[2] *Bob Tatone Ford, Inc. v. Ford Motor Company,* Case No. C–3–97–415 (S.D.Ohio). That litigation was assigned to Judge Susan Dlott, who referred the matter to Magistrate Judge Michael Merz. After the Defendant had moved for summary judgment,[3] Judge Merz issued his Report on July 10, 1998, recommending that Judge Dlott sustain that motion. *See* Doc. # 29 in Case No. C–3–97–415. On September 28, 1998, Judge Dlott overruled Tatone Ford's objections to Judge Merz' Report and Recommendations and, thus, sustained the Defendant's motion for summary judgment. *See* Doc. # 36 in Case No. C–3–97–415. Judgment was entered on that decision. *See* Doc. # 37 in Case No. C–3–97–415. Tatone Ford appealed that final judgment to the Sixth Circuit Court of Appeals and requested that Judge Dlott stay that judgment and enter an injunction pending appeal. In opposing Tatone Ford's request for a stay, Defendant indicated that it was willing to provide the dealer an opportunity to sell its assets, if that motion were to be denied, and that, therefore, it did not intend to make the termination of the franchise agreement effective immediately. To that end, Defendant stated that it would provide a prospective buyer within 30 days and, further, that it would allow an additional 60 days in which a sale could be consummated. Judge Dlott denied Tatone Ford's requests for a stay and an injunction on January 21, 1999. *See* Doc. # 57 in Case No. C–3–97–415.

While the earlier case was pending on appeal before the Sixth Circuit, Defendant notified Tatone Ford, by letter under date of May 12, 1999, that the termination of the franchise agreement would become effective on May 14, 1999. Tatone Ford attempted to appeal that termination to the Policy Board, which denied the request for a hearing. In addition, Tatone Ford sought an emergency injunction from the Sixth Circuit, preventing the Defendant from terminating the franchise agreement. The Sixth Circuit denied that request for injunctive relief. After the termination of the franchise agreement became effective on June 17, 1999, Tatone Ford initiated this litigation, by filing its Complaint (Doc. # 1) in the Common Pleas Court for Greene County, Ohio. The Defendant timely removed the lawsuit to this Court. *See* Doc. # 1. As is indicated above, Tatone Ford claims that the termination of the franchise agreement violated the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.;* Ohio Revised Code §§ 1333.72–73 (repealed); and the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code. In addition, Plaintiff claims the termination constituted a breach of contract. After this lawsuit had been filed, the Sixth Circuit, on December 17, 1999, affirmed the decision of Judge Dlott to enter summary judgment in favor of the Defendant, in the earlier lawsuit between the parties. *Bob Tatone Ford, Inc. v. Ford Motor Company,* 197 F.3d 787 (6th Cir.1999).

This case is now before the Court on the Defendant's Motion for Summary Judgment (Doc. # 13). As a means of analysis,

---

**2.** In addition, Tatone Ford contended that the Defendant had violated its rights to due process and equal protection.

**3.** The Defendant agreed to permit Tatone Ford to continue to operate under the franchise agreement, pending a ruling on its motion seeking summary judgment.

the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together,

*Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact

exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment....."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

■ The Defendant moves for summary judgment, arguing that Tatone Ford's claims are barred by the doctrine of *res judicata* or claim preclusion. Alternatively, Defendant argues that it is entitled to summary judgment on the merits of those claims. As an initial matter, this Court agrees with the Defendant that it is entitled to summary judgment on the merits of Tatone Ford's claims under Ohio's Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code. That statute limits the authority of franchisors, such as Defendant, to terminate their franchise agreements with their dealers, such as Tatone Ford. However, in Tatone Ford's previous appeal, the Sixth Circuit held that the Motor Vehicle Dealers Act could not be applied to the franchise agreement between Tatone Ford and the Defendant, because that statute did not become effective until after the parties had entered into that agreement. *Bob Tatone Ford, Inc. v. Ford Motor Company,* 197 F.3d 787, 790–92 (6th Cir.1999). Given that this Court is obligated to follow the decisions of the Sixth Circuit and, further, since Tatone Ford has failed to argue or to present evidence that this litigation arises out of a different franchise agreement than that which was at issue in the former litigation, this Court concludes that the Defendant is entitled to summary judgment on Tatone Ford's Motor Dealers Act claim. Accordingly, this Court need only decide whether principles of *res judicata* prevent Tatone Ford from asserting the *other* claims in this litigation.

■ Courts, including the Sixth Circuit, have applied the federal common law of *res judicata* or claim preclusion when the prior judgment was entered by a federal court. *J.Z.G. Resources, Inc. v. Shelby Ins. Co.,* 84 F.3d 211 (6th Cir.1996). Therein, both the initial and subsequent lawsuits involved state law claims and, therefore, were in federal court on the basis of diversity. Nevertheless, the Sixth Circuit concluded that the federal common law of claim preclusion was applicable, because one of the strongest policies a court can have is determining the scope of its own judgments and it would be destructive to the basic principles of the Federal Rules of Civil Procedure to require a federal

court to apply state law to determine the effect of one of those judgments. *Id.* at 214. *Accord, Paramount Aviation Corp. v. Augusta,* 178 F.3d 132 (3rd Cir.), *cert. denied,* 528 U.S. 878, 120 S.Ct. 188, 145 L.Ed.2d 158 (1999); *Porn v. National Grange Mut. Ins. Co.,* 93 F.3d 31 (1st Cir.1996); *E.E.O.C. v. Harris Chernin, Inc.,* 10 F.3d 1286 (7th Cir.1993). Herein, the prior lawsuit between the parties was decided in a federal court; therefore, this Court must apply federal principles of *res judicata.*

▆▆▆ In *E.E.O.C. v. Frank's Nursery & Crafts, Inc.,* 177 F.3d 448 (6th Cir.1999), the Sixth Circuit wrote:

Under federal *res judicata,* or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *See Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). The doctrine precludes litigation of claims that "were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

*Id.* at 462–63. Thus, *res judicata* prevents the re-litigation of claims that were actually litigated in the prior action and claims that could have been litigated in that lawsuit. *Knox County Ed. Assn. v. Knox County Bd. of Ed.,* 158 F.3d 361, 376 (6th Cir.1998), *cert. denied,* 528 U.S. 812, 120 S.Ct. 46, 145 L.Ed.2d 41 (1999). The federal law of *res judicata* will bar a claim if the following elements are present, to wit:

1) a final decision on the merits by a court of competent jurisdiction; 2) a subsequent action between the same parties or their privies; 3) the claim in the subsequent action which was litigated or which should have been litigated in the prior action; and 4) an identity of the causes of action.[4] *See Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir.1995), *cert. denied,* 517 U.S. 1220, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996).

In response to Defendant's assertions that *res judicata* bars its claims in this litigation, Tatone Ford presents a two-pronged attack. Initially, it argues that Judge Dlott's grant of summary judgment was not a decision on the merits. Additionally, Tatone Ford contends that it is asserting claims in this litigation which arose after the prior lawsuit and that, therefore, they should not have been litigated in that lawsuit. Thus, Tatone Ford is arguing that the first and third elements of the test for the application of *res judicata* or claim preclusion have not been met.[5] The Court addresses these two arguments in the above order.

▆▆▆ Initially, Tatone Ford contends that Judge Dlott's decision to grant summary judgment in favor of Defendant was not a final decision on the merits, since that judicial officer essentially decided that it (Tatone Ford) was without standing to prosecute its claims. This Court will accept for present purposes that a decision that a party is without standing to prosecute a claim is not a final decision on the merits by a court of competent jurisdiction. However, it cannot agree with Ta-

---

**4.** As is indicated above, *res judicata* or claim preclusion prevents the re-litigation of "claims actually litigated as well as claims that could have been litigated." *Knox County Ed. Assn.,* 158 F.3d at 376. The third element of the test for *res judicata* is whether the claim in the subsequent lawsuit was or should have been litigated in the prior lawsuit. For pur-

poses of the application of *res judicata,* a claim should have been brought in an earlier lawsuit, if it could have been brought therein.

**5.** Tatone Ford does not challenge that this litigation is between the same parties as the prior lawsuit, or that there is an identity of causes of action.

tone Ford that Judge Dlott based the grant of summary judgment to the Defendant on the premise that the Plaintiff was without such standing. On the contrary, that judicial officer decided that the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code, did not apply, since that statute had been enacted after the effective date of the franchise agreement between the parties. In addition, Judge Dlott rejected Tatone Ford's claim that the Defendant's intended termination of the franchise agreement would constitute a breach of contract, because the termination was without just cause, since the franchise agreement did not require that Defendant have just cause for termination. Judge Dlott also rejected Tatone Ford's claim under Ohio Revised Code §§ 1333.72–73 (repealed), since that statute had been repealed. Thus, this Court rejects Tatone Ford's contention that Judge Dlott did not enter a final decision on the merits of the prior lawsuit. Indeed, neither Judge Dlott nor Judge Merz, whose Report and Recommendations were adopted, discussed the question of whether Tatone Ford had standing to prosecute its claims.

■ Additionally, Tatone Ford argues that *res judicata* does not bar his claims, to the extent that they are based upon events that occurred after judgment was entered in the previous litigation. This Court agrees with Tatone Ford that *res judicata* does not prevent a party from asserting claims in a subsequent lawsuit,

based on events that occurred after judgment was entered in the prior litigation. *See e.g., Putnam Pit, Inc. v. City of Cookeville, Tennessee,* 221 F.3d 834 (6th Cir. 2000) (claim preclusion does not bar a claim that is based upon events which occurred after the prior suit was initiated). However, to the extent that Tatone Ford's claims in this litigation are based upon events which occurred before it filed the previous lawsuit, *res judicata* prevents the dealer from pursuing them in this lawsuit. Therefore, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 13), to the extent that, with that motion, it seeks summary judgment on Tatone Ford's claims, based upon events that occurred before the earlier lawsuit was filed.

■ In response to Tatone Ford's argument that *res judicata* does not bar its claims based upon events occurring subsequent to the entry of judgment in the prior litigation, the Defendant contends that it is entitled to summary judgment on the merits of those claims.[6] In other words, Defendant does not argue that *res judicata* or claim preclusion prevents Tatone Ford from raising claims in this litigation, which are predicated upon events that occurred after the entry of judgment in the previous lawsuit. Therefore, this Court now turns to the merits of the parties' arguments concerning those claims, beginning its analysis by setting forth Tatone Ford's claims arising out of the post-judgment events ("post-judgment claims").[7]

---

**6.** As the Defendant points out, these claims have not been expressly plead in the Plaintiffs' Complaint. However, since the Defendant has addressed the merits of those claims, the Court will do the same. *See* Fed.R.Civ.P. 15(b) (noting that issues litigated by implied or express consent shall be addressed as if they had been raised in the pleadings).

**7.** In *Putnam Pit,* the Sixth Circuit indicated that *res judicata* does not bar a claim which is

based upon events that occurred after the filing of the prior lawsuit. Therefore, although that doctrine would not prevent Tatone Ford from asserting any claim in this litigation which was predicated on an event that occurred after the prior lawsuit had been filed, it is relying solely upon events that occurred after judgment was entered in that litigation.

*First,* Tatone Ford claims that Defendant breached a termination agreement between the parties. *Second,* Tatone Ford contends that the May 12th letter was coercive, in violation of the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq. Third,* Tatone Ford claims that Defendant breached the franchise agreement, because the Policy Board refused to hear its appeal of the May 12, 1999, letter, indicating that the termination of franchise agreement would be effective on May 14, 1999. *Fourth,* Tatone Ford claims that Defendant breached the franchise agreement, by failing to provide 120 days notice before terminating it.

■ Before addressing those four claims, it must be emphasized that Tatone Ford is limited to arguing that Defendant's conduct, after the judgment had been entered in the earlier lawsuit, violated only the federal statute and/or constituted a breach of contract. Although the Plaintiff has not expressly asserted that said conduct was in violation of the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code, or Ohio Revised Code §§ 1333.72–73 (repealed), such an assertion would have been fruitless. Above, this Court has noted that the Sixth Circuit has held that the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code, cannot be applied to the franchise agreement at issue in this litigation, since that statute became effective after the parties had entered into the franchise agreement.[8] Moreover, this Court agrees with Judge Dlott that Ohio Revised Code §§ 1333.72–73 (repealed) cannot serve as the basis for relief, since that statute was repealed by the Ohio General Assembly in

1980. Accordingly, the Court need only decide whether the evidence raises a genuine issue of material fact concerning Plaintiff's claim that Defendant violated the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.,* and/or breached its contract with Plaintiff. With that in mind, the Court addresses the parties arguments concerning Tatone Ford's post-judgment claims in the order which they are set forth above, discussing the third and fourth claim together.

■ According to Tatone Ford, the parties entered into a termination agreement, under which the Defendant promised to provide a buyer for the franchise within 30 days and to afford an additional 60 days to consummate that transaction. Tatone Ford claims that Defendant breached that agreement by failing to provide a purchaser. The genesis of this claim is the statement in Defendant's memorandum in opposition to Tatone Ford's request for a stay pending appeal in the prior lawsuit. In other words, Tatone Ford does not contend that it entered into an express contract with the Defendant, by which the latter promised to provide a purchaser within 30 days. According to Tatone Ford, it tacitly accepted the Defendant's offer. Defendant argues that it is entitled to summary judgment on this claim, because the alleged contract is not supported by consideration. This Court agrees. It is axiomatic that, under the law of Ohio, a contract must be supported by consideration. *See e.g., GenCorp, Inc. v. American Intern. Underwriters,* 178 F.3d 804, 813 (6th Cir.1999); *Nilavar v. Osborn,* 127 Ohio App.3d 1, 711 N.E.2d 726 (1998).

---

**8.** The Sixth Circuit concluded that the Ohio Motor Vehicle Dealers Act, Chapter 4517 of the Ohio Revised Code, did not apply to the franchise agreement between Tatone Ford and Defendant, because that agreement was executed in December, 1975, before the statute was enacted in 1980, and was amended in 1987. The Sixth Circuit did not hold the statute inapplicable because the events under that franchise agreement, which formed the basis of Tatone Ford's claim under the Ohio statute, occurred before the effective date of that statute.

"Consideration may consist either in a detriment to the promisee or a benefit to the promisor. *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 384, 620 N.E.2d 996, 1009." *Id.* at 14, 711 N.E.2d at 735. In addition, consideration must be something intended by the parties to the contract, rather than something merely incidental to same. *Id.* Herein, Tatone Ford has not identified the benefit which flowed to the Defendant (the promisor) as a result of Plaintiff's tacit acceptance of Defendant's promise, nor has Tatone Ford (the promisee) indicated the detriment it suffered. Therefore, the alleged post-termination contract upon which the this claim is based was not supported by consideration. As a consequence, such a contract was not formed (and the promise in question cannot be enforced). *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283, 704 N.E.2d 39, 43 (1997) ("Gratuitous promises are not enforceable as contracts, because there is no consideration.").

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 13), to the extent that, with that motion, it seeks summary judgment on Tatone's post-judgment claim that Defendant breached the alleged termination contract.

■ Tatone Ford contends that Defendant's letter of May 12, 1999, informing the former that the termination of the franchise agreement would become effective on May 14, 1999, violated the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.* In that letter, Defendant indicated that Tatone Ford must to sign a release, as required by ¶ 23 of the franchise agreement, if it intended to take advantage of benefits offered under ¶¶ 21 and 22 of that agreement. Tatone Ford argues that requiring it to sign a release violated the federal statute, because it was coercive. This Court cannot agree. Under 15 U.S.C. § 1222, an automobile dealer has a cause of action against a manufacturer which has failed to act in good faith in performing or complying with the terms of a franchise agreement or in terminating that agreement. Good faith is defined as acting in a fair and equitable manner, so that the other party to a franchise agreement is free from coercion. 15 U.S.C. § 1221(e). The Sixth Circuit has indicated that coercion "must include a wrongful demand which will result in sanctions if not complied with." *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 207 (6th Cir.1983) (internal quotation marks and citations omitted). Thus, if the Defendant made a wrongful demand in its letter of May 12th and threatened sanctions if Tatone Ford failed to comply with that demand, it would have violated the federal statute. However, the uncontroverted evidence fails to raise a genuine issue of material fact as to whether Defendant acted in that manner. Rather than making a wrongful demand on Tatone Ford and threatening sanctions if it failed to comply, the Defendant merely pointed out rights that Tatone Ford had under the franchise agreement. Whether the dealer decided to exercise those rights was its decision alone.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 13), to the extent that, with that motion, it seeks summary judgment on Tatone Ford's post-judgment claim (i.e., a claim based upon conduct occurring after the judgment had been entered in the earlier lawsuit) that the May 12th letter violated the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.*

■ In addition, Tatone Ford contends that the Defendant breached the franchise agreement, because the Policy Board refused to hear the appeal of the May 12, 1999, letter, and because the Defendant failed to provide 120 days notice prior to

the termination of that agreement. It is not questioned that the Policy Board heard an appeal from Defendant's notification to Plaintiff, in April, 1995, that it would terminate the franchise agreement. That body delayed resolution of Tatone Ford's appeal for a period of more than two years, giving the dealer an opportunity to cure its deficiencies. Thus, Tatone Ford has had far more than 120 days prior notice that the franchise agreement would come to an end. Therefore, it would appear that Defendant has not breached the franchise agreement in either manner asserted by Tatone Ford (i.e., the refusal of the Policy Board to hear the appeal and the Defendant's failure to provide 120 days notice prior to the termination of that agreement). However, both of these claim share the same theory, i.e., that the May 12, 1999, letter was somehow a new termination of the franchise agreement, unrelated to Defendant's ongoing efforts to accomplish that result, which it had begun in 1995. This Court cannot accept that theory.

The Defendant initially notified Tatone Ford of its intention to terminate the franchise agreement in April, 1995. The Policy Board stayed resolution of Tatone Ford's appeal from that notification for more than two years, affording the dealer the opportunity to cure its deficiencies. In September, 1997, that body decided against Tatone Ford on its appeal. In order to prevent the Defendant's notice of termination from becoming effective, Tatone Ford filed the initial lawsuit. While that litigation was pending, Defendant agreed to permit Tatone Ford to continue to operate under the franchise agreement, pending a ruling on its motion requesting summary judgment. After judgment had

been entered in favor of Defendant in that lawsuit, Tatone Ford requested a stay and an injunction, pending appeal. Those requests were denied by Judge Dlott on January 21, 1999. On May 12, 1999,[9] Defendant notified Tatone Ford that the effective date for the termination would be May 14th. The foregoing recitation of the uncontroverted events which preceded this litigation conclusively establish, as a matter of fact and of law, there being no genuine issue of material fact to the contrary, that the May 12th notification was *not* in some manner a new, totally unrelated, termination of the franchise agreement.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 13), to the extent that, with that motion, it seeks summary judgment on Tatone Ford's post-judgment claims that Defendant breached the franchise agreement, because the Policy Board refused to hear the appeal of the May 12, 1999, letter, and because the Defendant failed to provide 120 days notice, prior to the termination of that agreement.

Accordingly, based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 13). Judgment is to be entered in favor of the Defendant and against the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

9. In opposition to Tatone Ford's request for a stay, Defendant had indicated that it would delay the effective date of the termination for a total of 90 days, in order to afford Tatone

Ford the opportunity to sell its assets. As a consequence, there was a delay between the time of Judge Dlott's January 21st decision and the Defendant's May 12th letter.